PETER J. MONAGHAN and MERIUL D. MONAGHAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; PETER J. MONAGHAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Monaghan v. Commissioner
Docket Nos. 10068-78, 2090-79.
United States Tax Court
T.C. Memo 1981-280; 1981 Tax Ct. Memo LEXIS 464; 42 T.C.M. (CCH) 27; T.C.M. (RIA) 81280; June 8, 1981
John H. Norris, for the petitioners. James R. Rich, for the respondent. HALL MEMORANDUM OPINION HALL, Judge: Respondent determined deficiencies in petitioners' income taxes as follows: Petitioners
Docket No.
Year
Deficiency
Peter J. and
10068-78
1974
$ 19,330.77
Meriul D.
1975
17,976.88
Monaghan
Peter J.
2090-79
1976
4,993.09
Monagha
The sole issue for decision is whether petitioners accurately determined (for purposes of a charitable contribution deduction) the fair market value of a painting contributed by them to a charitable organization in 1974. [1]
*465 Peter J. Monaghan ("petitioner") and Meriul D. Monaghan, [2] husband and wife, resided in Michigan at the time they filed their petition in docket number 10068-78. Petitioner also resided in Michigan at the time he filed his petition in docket number 2090-79. In the 1950's petitioner inherited a portrait (the "Portrait") of a man ascribed to the seventeenth century Spanish painter Bartolome Esteban Murillo. In August 1974, petitioner contributed the Portrait to the Founder's Society of the Detroit Institute of Arts (the "Detroit Institute"), a qualified charitable organization under section 170. [3] On his 1974 joint income tax return petitioner reported $ 80,000 as the value of the Portrait at the time he contributed it to the Detroit Institute. Petitioner based this value on a July 29, 1974, report prepared by Howard B. Capponi. Capponi's report describes the Portrait as being in good condition but requiring the removal of some varnish, and as having a "replacement value" of $ 80,000 (purportedly based on appraisals by three art galleries: P. & D. Colnaghi & Co., *466 Ltd., London, England; Wildenstein & Co., New York, New York; and English Editions, Ltd., Grosse Pointe, Michigan (Capponi's firm). Finally, the report attributes the Portrait to Murillo based on an authentication by P. & D. Colnaghi & Co., Ltd., Wildenstein & Co., and Jose Lopez-Rey (ostensibly with the Metropolitan Musem of Art in New York City), a recognized art scholar. In addition, the report states: The work was examined by Dr. Ray [sic] in April 1974 and is in his estimation "undoubtedly by the master" Bartolome Esteban Murillo. In a letter to respondent dated September 28, 1979, Jose Lopez-Rey indicated that he had never actually seen the Portrait. He had, however, seen photographs of it in 1974 at which time, based solely on an inspection of the photographs, he " * * * expressed the view that its attribution to Murillo may be right * * *." Lopez-Rey's letter further stated that at no time did he express the conclusion that the Portrait "was undoubtedly by Murillo." In a letter to respondent dated September 10, 1979, Harry A. Brooks, president of Wildenstein *467 & Co., Inc., indicated that, after a careful search of Wildenstein's files, he could find no record of the Portrait. He acknowledged that Jose Lopez-Rey is a distinguished scholar whose opinion should be respected, but points out that Capponi's report misspells Lopez-Rey's name and that, to his knowledge, Lopez-Rey has never been attached to the Metropolitan Museum of Art. Respondent's first expert witness was Jonathan M. Brown, a professor and the director at the Institute of Fine Arts, New York University, [4] who testified that he first saw the Portrait in the summer of 1976 while visiting the Detroit Institute. At that time Brown did not believe that the Portrait, in its restored state, was either a Murillo or an important work. *468 Subsequent to the summer of 1976 the Portrait was stripped. [5] As a result, the poor condition of the original Portrait became apparent. Brown estimated that only 40 percent of the paint of the original artist remains on the canvas. To evaluate the attribution of the Portrait to Murillo, Brown chose five other Murillo paintings to form a basis for comparison. Brown placed particular reliance on the Portrait of Nicolas Omazur. Based on these comparisons, it is Brown's expert opinion that the Portrait is not a Murillo. Respondent also hired Victor D. Spark, an established art dealer and appraiser with fifty years of experience, [6] to prepare a report and testify as to his opinion of the fair market value of the Portrait. Spark reported that portraits by Murillo are rare and, should one turn up, it would have to be confirmed to be a Murillo by the living experts on Spanish painting such as Jose Lopez-Rey. According to Spark, the Portrait in question, even if by Murillo, is in such poor condition that it would probably not *469 have much value. It is Spark's opinion that, based on the condition of the Portrait and its unproven attribution to Murillo, the fair market value of the Portrait in 1974 was $ 3,000. In his notice of deficiency respondent determined that the fair market value of the Portrait at the time it was contributed to the Detroit Institute was $ 1,000. In view of the testimony of the two experts, Jonathan M. Brown and Victor D. Spark, we conclude that the Portrait was not painted by Murillo and was worth $ 3,000. Accordingly, we find that the fair market value of the Portrait at the time petitioner contributed it to the Detroit Institute was $ 3,000. Decisions will be entered under Rule 155. Footnotes
1. The petitioners refused to present any evidence on the deductibility of certain entertainment and publication expenses which respondent had disallowed. Since petitioners bear the burden of proof which respect to these issues, we deem them conceded by petitioners.↩
2. Meriul D. Monaghan is a petitioner solely by virtue of having filed a joint return with her husband.↩
3. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
4. Brown is a respected authority and qualified expert on seventeenth century Spanish painting including, in particular, the works of Murillo. In addition to memberships in several professional societies, Brown has also received numerous prizes and awards for his academic and professional work. Brown has published one book on Murillo and one on seventeenth century Spanish painting. J. Brown, Murillo and His Drawings (1976); J. Brown, Images and Ideas in Seventeenth Century Spanish Painting (1978). Brown has also published at least one article on Murillo. Brown, Notes on Princeton Drawings 9: Bartolome Esteban Murillo↩, 32-2 Record of the Art Museum of Princeton University 28 (1973).
5. Stripping is a process of removing restorations from a painting. After a painting is stripped all that remains is the original artist's work.↩
6. Spark is a member of the Appraisers Association of America, and has been a dealer in American and foreign paintings, drawings, and works of art for fifty years. He has acted as a consultant to the Internal Revenue Service in New York, New Jersey and Washington, D.C. He has done work for at least twenty insurance companies, forty museums, and numerous banks, estates and private collectors.↩